CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
LISA LABARRE (Bar No. 246429)
(E-Mail: Lisa_LaBarre@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-1476
Facsimile: (213) 894-0081

Attorneys for Defendant
ANDRE MORROW LACKNER

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 22-603-DSF |
| Plaintiff, | **BRIEF IN SUPPORT OF PRETRIAL RELEASE** |
| v. | Hearing Date: April 21, 2023 |
| ANDRE MORROW LACKNER, | Hearing Time: 10:00 a.m. |
| Defendant. | Before the Honorable Alka Sagar |

Andre Morrow Lackner, through counsel of record Deputy Federal Public Defender Lisa LaBarre, hereby files this motion in support of pretrial release.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: April 18, 2023     By  /s/ Lisa LaBarre
                              LISA LABARRE
                              Deputy Federal Public Defender
                              Attorney for Andre Morrow Lackner

## I. INTRODUCTION AND STATEMENT OF FACTS

At the time of his prior detention hearing in December 2022, Andre Lackner was unmedicated, not receiving therapy, and had no plan in place to address his mental health issues. Mr. Lackner's mental health condition is directly linked to the allegations in this matter: sending text messages with offensive content. Mr. Lackner had been previously diagnosed with Bipolar Disorder and Borderline Personality Disorder, and had been prescribed medication to regulate his moods. Nevertheless, at the time of the offense, he had isolated himself from friends and family and was not receiving treatment or medication for his mental health conditions. Mr. Lackner was also using marijuana and other controlled substances heavily.

Now, Mr. Lackner has reconnected with his mother and father, who both support his release on bond and are willing to be sureties. Mr. Lackner also has the support of his close friends, including Hala Khouri, who is also willing to be a surety for Mr. Lackner. Mr. Lackner is receiving therapy and medication at MDC, and is focused on maintaining his sobriety. Exhibit A, MDC medical record. Mr. Lackner has remained incident-free at MDC and works as an orderly. Exhibit J, MDC evaluation.

Certified social worker De Anna Dove, ACSW evaluated Mr. Lackner. Exhibit A, re-entry plan. Social worker Dove reports that Mr. Lackner experienced extensive trauma throughout his life, and that he coped with his trauma and mental health conditions with substance abuse. *Id.* She verified that Mr. Lackner is currently enrolled the Full Service Partnership program at Didi Hirsch Mental Services, and upon his release he will immediately report to Didi Hirsch for evaluation and inpatient mental health treatment. *Id.*

Mr. Lackner is committed to managing his mental health condition and staying sober. Mr. Lackner therefore respectfully urges this Court to grant bail under whatever conditions the Court deems necessary.

## II. ARGUMENT

### A. The Bail Reform Act mandates release if there are conditions that could reasonably assure an individual's presence in court or protect the community.

Under the Bail Reform Act, Mr. Lackner must be released unless this Court determines that no condition nor combination of conditions could *reasonably* assure his presence in court or protect the community. *United States v. Motamedi*, 767 F.2d 1403, 1406-07 (9th Cir. 1985) (citation omitted). That is, the Court need not find that the conditions will *certainly*, or even *likely* ensure his presence or the safety of the community—the Court need only find that there are conditions that do a *reasonably* good job of doing so. *See, e.g., United States v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Cal. 1992) ("Section 3142 does not seek ironclad guarantees, and the requirement that the conditions of release 'reasonably assure' a defendant's appearance cannot be read to require guarantees against flight."); *United States v. Gentry*, 455 F. Supp. 2d 1018, 1032 (D. Ariz. 2006) (same); *United States v. Portes*, 786 F.2d 758, 764 n.7 (7th Cir. 1985); *United States v. Fortna*, 769 F.2d 243, 250 (5th Cir. 1985); *United States v. Orta*, 760 F.2d 887, 890–92 (8th Cir. 1985); *United States v. Himler*, 797 F.2d 156 (3rd Cir. 1986); *see also United States v. Tortora*, 922 F.2d 880, 884 (1st Cir. 1990) (holding that even where the issue is the safety of the community, Congress did not require guarantees in enacting the Bail Reform Act).

So long as there are conditions that will reasonably assure the individual's appearance and the safety of the community, the individual must be released. "In our society liberty is the norm, and detention prior to trial . . . is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987); *United States v. Motamedi*, 767 F.2d 1403, 1407 (9th Cir. 1985) ("[W]e are not unmindful of the presumption of innocence and its corollary that the right to bail should be denied only for the strongest of reasons.").

3

In determining whether there are conditions that can reasonably assure the appearance of the person and the safety of the community, courts consider four factors under 18 U.S.C. § 3142(g): (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

Based on these factors, the government must prove, by clear and convincing evidence, that there are no conditions that can reasonably assure the safety of the community and, by a preponderance of the evidence, that there are no conditions that can reasonably assure the appearance of the person. *Motamedi*, 767 F.2d 1403, 1406–07. As discussed below, the government will not be able to meet its burden to support Mr. Lackner's continued detention.

**B.   Mr. Lackner must be released as there are conditions that can reasonably assure his appearance in court and the safety of the community.**

    **1.   The nature and circumstances of the offense: Mr. Lackner is receiving mental health treatment and will continue to receive treatment upon release**

Mr. Lackner is accused of sending offensive text messages. He is not accused of committing acts of violence, or acting on any of the statements contained in those messages. He also has no history of committing acts of violence, and he has no felony conviction history. At the time of the offense, Mr. Lackner was suffering from untreated mental illness and substance addiction, and had isolated himself from his family and friends. Indeed, Mr. Lackner's father's prior statements to Pretrial Services reflect Mr. Lackner's then-estrangement from his family.

Mr. Lackner is now receiving medication and therapy at MDC. Exhibit A at 2. Mr. Lackner receives Mirtazapine and Buspirone daily, and he is compliant with his medication regimen. Mr. Lackner admitted to BOP psychologist Ashley Hernandez that he needs help managing his mental health symptoms, and that he also wanted to engage in drug and alcohol treatment. *Id.* at 1. Furthermore, his BOP case manager reports that he has remained incident-free at MDC, has volunteered assisting with orderly duties, and has been observed to have a calm, positive attitude. Exhibit J, letter from BOP case manager R. Sotela.

With intensive mental health and drug treatment, Mr. Lackner poses no risk of flight or danger to the community. Indeed, psychologist Hernandez states that "inmate LACKNER appears stable and does not currently demonstrate active signs indicative of a major mental health disorder or acute distress." Exhibit A. Mr. Lackner also expressed his willingness to contact Psychology Services for routine and emergent reasons. *Id.* Upon release, Mr. Lackner will immediately report to Didi Hirsch Mental Services in Glendale for inpatient mental health treatment. Exhibit B. Mr. Lackner is a prior patient of Didi Hirsch and he is already enrolled in their Full Service Partnership Program that provides therapy, substance abuse treatment, housing, and medication. *Id.*

### 2. Mr. Lackner's history and characteristics: Mr. Lackner has significant support from his family and friends

Mr. Lackner was born in Torrance and has lived in Southern California for nearly his entire life. At the time of his arrest Mr. Lackner was an undergraduate student at California State University, Northridge, and he wishes to re-enroll in school as his treatment allows. Mr. Lackner previously obtained an Associate's Degree from Santa Monica College.

Thankfully, while in custody Mr. Lackner reconnected with his mother and father, who both now support his release on bond and are willing to be sureties. Father Lymer John Lackner writes:

5

> He is a very intelligent, talented, and productive member of society when these disorder issues don't arise. When these issues randomly come up, a problem of disorientation happens. … Prison time is not the answer to this problem. Locking him up in a prison cell won't really fix anything. What he needs is professional monitored therapy from therapists that understand and know how to treat people with these specific types disorders, as well as anger management.

Exhibit C, letter from Lymer John Lackner. Mr. Lackner's mother, Cassandra Lackner, adds: "[P]lease know that Andre is a good person and has a loving family that wants to see him mentally and physically well. We will continue to seek support from DiDi Hirsch mental health and NAMI as necessary. I love my son." Exhibit D, letter from Cassandra Lackner.

Mr. Lackner also has substantial support from his friends, including Hala Khouri, a trauma specialist who trains social workers and mental health professionals. Ms. Khouri is well-aware of the nature of allegations and Mr. Lackner's illness, and writes:

> It's rare to see someone with a mental illness like him exhibit such self-awareness. I know the message he is charged with sending contained anti-semitic tropes and threats. He can also say negative things about immigrants as well as Black people. I know that the "real" Andre does not believe these things. My family is like family to him. My husband is Jewish, and I am an immigrant. He loves us like his own family.

Exhibit E, letter from Hala Khouri. Reflecting her confidence that Mr. Lackner is not a risk of flight or danger to the community, she is also willing to be a surety for Mr. Lackner. Additional friends and family echo that Mr. Lackner is an intelligent, thoughtful, and kind person who needs assistance managing his mental health. Exhibit

F, letter from Paul Eckstein; Exhibit G, letter from Jawal Awan; Exhibit H, letter from Gina Robins; Exhibit I, letter from Deirdre Price.

The Office of the Federal Public Defender will also assist Mr. Lackner's needs on an ongoing basis. Social worker Dove will assist Mr. Lackner in applying for General Relief, Cal-Fresh, and Medi-Cal. Exhibit B. These benefits will provide Mr. Lackner with financial assistance, food, and medical insurance for his ongoing treatment. Ultimately, it is Mr. Lackner's intention to complete his Bachelor's Degree at Cal State Northridge.

### 3. Considering the factors under § 3142(g), there are conditions this Court can impose to allow for Mr. Lackner's release.

There are conditions that this Court can fashion to reasonably assure the safety of the community and Mr. Lackner's appearance at future court proceedings. When receiving mental health treatment, Mr. Lackner is not a danger to the community. Upon his release, Mr. Lackner will immediately report to treatment at Didi Hirsch. Mr. Lackner intends to reside at Didi Hirsch in their inpatient mental health treatment program for as long as necessary. Mr. Lackner is committed to treatment, including substance abuse treatment, and he will gladly participate in any treatment ordered by the Court.

Mr. Lackner is also amenable to location monitoring and whatever other bond conditions that this Court may impose. Given his strong community ties and the assurances by Lymer John Lackner, Cassandra Lackner, and Hala Khouri that he will appear in court and not pose a danger to the community, Mr. Lackner should be released from custody.

///

///

///

## III. CONCLUSION

For the foregoing reasons, Mr. Lackner respectfully requests that he be released on bond in this matter.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: April 18, 2023       By  /s/ Lisa LaBarre
                                LISA LABARRE
                                Deputy Federal Public Defender
                                Attorney for Andre Morrow Lackner